UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------------ x
PAUL K.,[1]                                                        :
                                                                   :
                              Plaintiff,                           :
                                                                   :
        v.                                                         :    22-CV-00243 (SFR)
                                                                   :
KILOLO KIJAKAZI[2] COMMISSIONER OF                                 :
SOCIAL SECURITY,                                                   :
                              Defendant.                           :
------------------------------------------------------------------ x

### MEMORANDUM & ORDER

Plaintiff Paul K., pursuant to 42 U.S.C. §§ 405(g), appeals from the adverse decision of the Commissioner of Social Security ("Commissioner") following the denial of Plaintiff's application for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI").[3]

---

[1] Pursuant to this Court's January 8, 2021 Standing Order, the Plaintiff is identified by his first name and last initial or as "Plaintiff" throughout this opinion. *See* Standing Order Re: Social Security Cases, No. CTAO-21-01 (D. Conn. Jan. 8, 2021). The Defendant will be identified as "the Commissioner."

[2] When Plaintiff filed this action, he named the then-Acting Commissioner of the Social Security Administration, Kilolo Kijakazi, as Defendant. Compl., ECF No. 1. Acting Commissioner Kijakazi no longer serves in that office. Current Commissioner Frank Bisignano is substituted as Defendant pursuant to Fed. R. Civ. P. 25(d). The Clerk of the Court is respectfully requested to amend the case caption accordingly.

[3] Under the Social Security Act, the "Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under [the Act]." 42 U.S.C. § 405(b)(1). The Commissioner's authority to make such findings and decisions is delegated to administrative law judges ("ALJs"). *See* C.F.R. §§ 404.929 et seq. Claimants can in turn appeal an ALJ's decision to the Social Security Appeals Council. *See* 20 C.F.R. §§ 404.967 et seq. If the appeals council declines review or affirms the ALJ opinion, the claimant may appeal to the United States district court. Section 205(g) of the Social Security Act provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

1

Plaintiff has moved the Court for an order reversing the decision of the Commissioner and remanding for a calculation of benefits. Pl.'s Mot. ECF No. 14. In the alternative, Plaintiff seeks remand for a new hearing. Mem of L. in Supp. Of Pl.'s Mot. to Rev ("Pl.'s Mem.") 26, ECF No. 14-2. The Commissioner in turn filed a Motion to Affirm the Decision of the Commissioner. ECF No. 19.

The issues presented are whether the Administrative Law Judge ("ALJ") sufficiently developed the record; whether he properly considered Plaintiff's physical impairments; whether his decisions were supported by substantial evidence; whether he followed the treating physician rule; and whether the ALJ was properly appointed.

For the reasons set forth below, Plaintiff's motion to reverse and award benefits is **DENIED**. Plaintiff's alternative motion for remand is **GRANTED**. The Commissioner's motion to affirm is **DENIED.**

The Decision of the Commissioner is **VACATED** and **REMANDED** for further proceedings consistent with this Opinion.

I. **BACKGROUND**

  A. **Factual Background[4]**

Plaintiff's medical history includes obesity, type 2 diabetes, hypertension, hyperlipidemia, coronary artery disease, ischemic cardiomyopathy, and chronic upper abdominal pain. Administrative Record ("R.") 702, ECF No. 10. He also has two stents. R. 52.

---

[4] This section generally summarizes Plaintiff's medical history and conditions, but given the length of the record, it is not exhaustive. The factual background provided here focuses on those aspects of Plaintiff's medical history that underly the parties' dispute.

On July 14, 2016, a week before the alleged onset date of his disability, Plaintiff presented to the emergency room of the Carolinas HealthCare system's Pineville facility in Charlotte, North Carolina, with diffuse abdominal pain. R. 515. On July 17, 2016, he returned to that emergency room for largely the same issues and received various prescriptions, in addition to pain medication. R. 504-505. On July 21, 2016, he returned again to the emergency room where he received a cholecystectomy and an x-ray. R. 369.

After his release from the hospital, Plaintiff had a follow-up appointment with primary care physician Mack W. White on August 17, 2016. R. 722. Dr. White prescribed medications, and an upper endoscopy showed significant inflammation in the stomach and duodenum. R. 722. Two days later, on August 19, 2016, Plaintiff returned to the emergency room, again for severe abdominal pain. R. 369.

Thereafter, Plaintiff presented to the emergency room on January 5, 2017. R. 799. Plaintiff saw Dr. White on September 29, 2017 and again on January 31, 2018, when Dr. White suspected that that Plaintiff's "right upper quadrant abdominal pain is neuropathic." R. 951. Plaintiff saw Dr. White for the last time on April 25, 2018, when Dr. White noted that Plaintiff continued to have abdominal pain. R. 1042. Notes from this April 25, 2018, meeting record that Plaintiff had continued to take numerous different medications, including Oxycodone to treat the symptoms of abdominal pain, through 2018. R. 1042. On June 25, 2018, Plaintiff presented to the hospital for upper right quadrant pain. R. 800.

On August 8, 2018, Plaintiff presented to the emergency room at the Hospital of Central Connecticut for abdominal pain. R. 1133. On December 19, 2018, Plaintiff received a physical examination from Advance Practice Registered Nurse ("APRN") Lyla A. Natt. R. 1523. On January 4, 2019, Plaintiff returned to the emergency room at the Hospital of Central

3

Connecticut. R. 1081. On March 18, 2019, he spent a day at the Hospital of Central Connecticut for the same chronic abdominal pain. R. 1399. On March 12, 2019, Plaintiff again saw APRN Natt. R. 1513. On May 13, 2019, he visited UCONN Health center for abdominal pain. R. 1512. The last recorded meeting with APRN Natt occurred on June 19, 2019, for treatment again of Plaintiff's abdomen pain. R. 1499.

B.   **Procedural History**

On November 17, 2016, Plaintiff filed an application for Title II Social Security DIB and Title XVI SSI. R. 19.

In both applications, Plaintiff alleged disability beginning on or around July 21, 2016. R. 19. These claims were initially denied on June 1, 2017, and again upon reconsideration on April 3, 2018. R. 19. Plaintiff then filed a written request for a hearing on April 20, 2018, and the hearing was held on July 10, 2019. R. 19.

The ALJ issued an unfavorable decision on July 30, 2019, R. 29, which Plaintiff appealed, R. 10.

On August 12, 2020, the Appeals Council denied review of the ALJ's decision. R. 1. On January 14, 2022, the Appeals Council extended the time to file a civil action for 30 days from receipt of the notifying letter. ECF No. 1, at 3. Plaintiff then filed suit in this court on February 9, 2022. ECF No. 1.

On June 13, 2022, Plaintiff filed a Motion to Reverse the Decision of the Commissioner. ECF No. 14. On June 30, 2022, the Commissioner filed a Motion to Affirm the Decision of the Commissioner. ECF No. 19.

4

## II.  APPLICABLE LEGAL PRINCIPLES

### A.  Eligibility for SSI Benefits

The Social Security Act establishes that benefits are payable to individuals who have a disability. 42 U.S.C. § 423(a)(1). "The term 'disability' means . . . [an] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . ." *Id*. § 423(d)(1)(A). To determine whether a claimant is disabled within the meaning of the SSA, the ALJ must follow a five-step evaluation process as promulgated by the Commissioner.

First, the ALJ must determine whether the claimant is engaged in substantial gainful activity. *Id.* § 404.1520(b).

If the claimant is not engaged in such activity, the ALJ must proceed to Step Two to determine whether the claimant has a severe medically determinable impairment or combination of impairments. *Id.* § 404.1520(c). An impairment will be considered severe if it significantly limits a claimant's ability to perform "basic work activities." *Id.*

If the claimant has a medically determinable severe impairment, the ALJ proceeds to Step Three to determine whether any identified severe impairment meets or medically equals those identified in Appendix 1. *Id.* § 404.1520(d). These impairments are *per se* disabling, assuming a claimant meets the duration requirement. *Id.*

If the claimant's impairments are not *per se* disabling, then the ALJ proceeds to Step Four, which entails assessing the claimant's residual functional capacity, or their ability to work in light of their limitations. *Id.* §§ 404.1520(a)(4)(iv), 404.1520(e), 404.1545(a)(1).

At Step Five, the ALJ must establish whether the claimant's residual functional capacity will allow the performance of any past relevant work. If the claimant is unable to

5

perform past relevant work, the ALJ bears the burden of proving that, accounting for the claimant's age, education, work experience, and residual functional capacity, the claimant can perform other work that exists in significant numbers in the national economy. *Id.* § 404.1520(g)(1). If the ALJ proves all of that, then the claimant is not disabled. *Id.*

The claimant bears the burden of proving the requirements of Steps One through Four, after which the burden shifts to the Agency to prove that the claimant is capable of working. *Carroll v. Sec'y of Health & Hum. Servs.*, 705 F.2d 638, 642 (2d Cir. 1983) ("The burden is on the claimant to prove that he is disabled within the meaning of the Act. However, if the claimant shows that his impairment renders him unable to perform his past work, the burden then shifts to the Secretary to show there is other gainful work in the national economy which the claimant could perform.") (citations omitted).

### B.      Standard of Review

Under section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), a district court reviewing a final decision of the Commissioner of Social Security "is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). A district court reviewing a disability determination "must determine whether the Commissioner's conclusions 'are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard.'" *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quoting *Beauvoir v. Chater*, 104 F.3d 1432, 1433 (2d Cir. 1997)).

The court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. *Wagner v. Sec'y of Health & Hum. Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to ascertain whether the Commissioner applied the correct legal principles in reaching his/her conclusion, and whether the decision is

supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). "Substantial evidence is 'more than a mere scintilla.'" *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012) (per curiam) (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran*, 569 F.3d at 112. It is a "very deferential standard of review—even more so than the 'clearly erroneous' standard." *Brault*, 683 F.3d at 448). To determine "whether the agency's findings are supported by substantial evidence, 'the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)).

"Whether an ALJ has satisfied his obligation to develop the record 'must be addressed as a threshold issue.'" *Caruso v. Saul*, 2019 WL 5853527, at *4 (D. Conn. Nov. 8, 2019) (quoting *Downes v. Colvin*, 2015 WL 4481088, at *12 (S.D.N.Y. July 22, 2015)). "Even if the ALJ's decision might otherwise be supported by substantial evidence, the Court cannot reach this conclusion where the decision was based on an incomplete record." *Id.* at *10 (citing *Moreau v. Berryhill*, 2018 WL 1316197, at *4 (D. Conn. Mar. 14, 2018)); *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (noting that a "hearing on disability benefits is a non-adversarial proceeding," and as such, "the ALJ generally has an affirmative obligation to develop the administrative record"). "Even when a claimant is represented by counsel, it is the well-established rule in our circuit 'that the social security ALJ, unlike a judge in a trial, must on behalf of all claimants . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding.'" *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.

7

2009) (quoting *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508-09 (2d Cir. 2009)). An ALJ's failure to comply with this mandate is legal error. *Rose v. Comm'r of Soc. Sec.*, 202 F. Supp. 3d 231, 239 (E.D.N.Y. 2016).

A court has the power "to enter, upon the pleadings and transcript of record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Shalala v. Schaefer*, 509 U.S. 292, 297 (1993). The court may remand to the agency for further proceedings in cases where the Commissioner "has failed to provide a full and fair hearing, to make explicit findings, or to have correctly appl[ied] the law and regulations." *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991); *see Rosa v. Callahan*, 168 F.3d 72, 82–83 (2d Cir. 1999).

Reversals for the sole purpose of calculating benefits are only permitted where the present record shows persuasive proof of disability such that a remand for further proceedings would serve no useful purpose. *Williams v. Apfel*, 204 F.3d 48, 50 (2d Cir. 1999) (permitting an award of benefits where "the records provided persuasive evidence of total disability that rendered any further proceedings pointless").

### III.   DISCUSSION

Plaintiff asserts six claims of error support remand or reversal: the administrative record was not adequately developed; Plaintiff's obesity and pain were not adequately considered; the treating physician rule was not followed; the ALJ's step two findings are unsupported; the ALJ's step four conclusions are unsupported; and the ALJ issuing the decision was not constitutionally appointed.

I find remand proper because the ALJ did not adequately develop the evidence in the record before making his decision, particularly by failing to obtain medical source statements

8

from Plaintiff's treating physicians. Plaintiff's last claim of error, that the ALJ issuing the decision was not constitutionally appointed, is moot given the remand. On remand, the ALJ should address Plaintiff's other four claims of error at the new hearing. *See Robles v. Saul*, No. 3:19-CV-01329 (TOF), 2020 WL 5405877, at *10 (D. Conn. Sept. 9, 2020) ("Upon remand, the Commissioner shall consider all of the Plaintiff's claims of error not discussed in this decision.").

### A.   Insufficient Development of the Administrative Record

Plaintiff argues that remand is warranted because the ALJ failed to adequately develop the administrative record by obtaining a medical source statement from any clinician who treated Plaintiff. Pl.'s Mem. 7.[5] Plaintiff asserts that the medical records before the ALJ from clinicians who treated Plaintiff did not provide assessments of his function-by-function capacity and there was thus a clear need for medical source statements before the ALJ could properly determine Plaintiff's residual functional capacity ("RFC"). *Id.* at 2-3. Plaintiff stresses in particular the need for an opinion from Dr. White and APRN Natt, who could have opined on the impact of Plaintiff's abdominal pain on his functioning. *Id.* at 1.

The Commissioner responds that the agency did request medical opinions, including a function-by-function analysis from the treating physicians. Def.'s Mem. 20. The Commissioner highlights the fact that the Plaintiff bears the burden of proof through step four and argues that medical records provided to the agency enabled the ALJ to assess Plaintiff's

---

[5] A medical source statement offers a description of "what you [i.e. the claimant] can still do despite your impairment(s)." 20 C.F.R. §§ 404.1513(b)(6), 416.913(b)(6).

9

RFC. Def.'s Mem. 26. The Commissioner also observes that the record contains the opinions of state agency medical consultants. Def.'s Mem. 24.

I agree that remand is required because the ALJ failed to adequately develop the record by considering medical source statements from Plaintiff's treating clinicians (Dr. White and APRN Natt) or, if he could not obtain them, ordering a consultative examination.

### 1. Duty to Develop Record

The ALJ was required to obtain information necessary to make an accurate assessment of Plaintiff's impairments and RFC. The ALJ is "responsible for developing [the claimant's] complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 404.1545(a)(3). The regulations define "complete medical history" as, at a minimum, "the records of [a claimant's] medical source(s) covering at least the 12 months preceding the month in which" a claim is filed. 20 C.F.R. § 404.1512(b)(1)(ii). "Every reasonable effort" means that the Social Security Administration ("SSA") must:

> make an initial request for evidence from [a claimant's] medical source . . . and, . . . make one follow-up request to obtain the medical evidence necessary to make a determination. The medical source . . . will have a minimum of 10 calendar days from the date of [the SSA's] follow-up request to reply, unless [the SSA's] experience with that source indicates that a longer period is advisable in a particular case.

*Id.* § 404.1512(b)(1)(i); *see Maldonado v. Comm'r of Soc. Sec.*, 524 F. Supp. 3d 183, 193 (S.D.N.Y. 2021).

In determining RFC, the ALJ will "consider any statements about what you can still do that have been provided by medical sources, whether or not they are based on formal medical

examinations" and "consider descriptions and observations of your limitations from your impairment(s), including limitations that result from your symptoms, such as pain, provided by you, your family, neighbors, friends, or other persons." 20 C.F.R. § 404.1545(a)(3). Medical sources are licensed healthcare professionals, including doctors, psychologists, optometrists, and other specialists. 20 C.F.R. § 404.1502(a).

Pursuant to 20 C.F.R. § 404.1513(b)(6) (2015), the SSA shall request a medical source statement about what a claimant can do despite their impairment.[6] The SSA "may order a consultative examination while awaiting receipt of medical source evidence in some instances, such as when we know a source is not productive, is uncooperative, or is unable to provide certain tests or procedures." 20 C.F.R. § 404.1512(b)(2). The ALJ "will not evaluate this evidence until we have made every reasonable effort to obtain evidence from your medical sources." *Id.*

In *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33-34 (2d Cir. 2013), the Second Circuit held that a medical source statement is not required where "the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity." *Id.* at 34. However, where the record contains assessments of medical conditions, but no analysis of how those conditions relate to RFC, courts in this District have found the

---

[6] "The Social Security Administration revised its medical source regulations in 2017, but the new regulations apply only to claims filed on or after March 27, 2017." *Smith v. Comm'r of Soc. Sec. Admin.*, 731 F. App'x 28, 30 n.1 (2d Cir. 2018). District courts in this Circuit have held that § 404.1513(b)(6) (2015) applies to claims filed before March 27, 2017, even if the ALJ renders a decision after that date. *See, e.g.*, *Jolley v. Saul*, No. 3:19-cv0174 (JAM), 2020 WL 1502277, at *4 n.4 (D. Conn. Mar. 30, 2020) (citing *Smith* and holding that § 404.1513(b)(6)'s requirement to secure medical source statements applied to claims filed before March 2017 even though ALJ decision was after that date); *Katz v. Comm'r of Soc. Sec.*, No. 19-CV-2762 (PKC), 2020 WL 5820146, at *4 (E.D.N.Y. Sept. 30, 2020) (applying § 404.1513(b)(6) because claim filed before March 27, 2017 even though ALJ decision was after that date).

record to be incomplete and in need of further development by the ALJ. *See, e.g.*, *Angelica M. v. Saul*, No. 3:20-CV-00727 (JCH), 2021 WL 2947679, at *7-9 (D. Conn. July 14, 2021) (remanding to fill "meaningful gaps in the record" where medical notes did not "present evidence or informal opinions as to how [plaintiff's] mental impairments would impact her capacity to work" and medical source statements failed to fill that gap); *Cassandra S. v. Kijakazi*, No. 3:22-CV-328 (MPS) (RMS), 2023 WL 2867068, at *12-13 (D. Conn. Jan. 30, 2023), *adopted*, 3:22-cv-00328-MPS, ECF No. 22 (D. Conn. Feb. 15, 2023) (concluding record was insufficient because the medical notes did not directly discuss how plaintiff's impairments affected her ability to work). "Where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history even when the claimant is represented by counsel or by a paralegal." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (alterations and internal quotation marks omitted). The ALJ's duty to develop the record reflects "the essentially non-adversarial nature of a benefits proceeding." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996).

### 2. Development of Record in Present Case

The Commissioner asserts that the ALJ satisfied his burden to develop the record because "the agency did attempt to solicit medical opinions, including a function-by-function analysis from the treating providers identified by Plaintiff." Def.'s Mem. 20. In support of this statement, the Commissioner points to correspondence generally addressed to "Carolinas Medical Center Pineville." *Id.* (citing R. 362). However, there is no indication that the ALJ sent a request directly to Dr. White or sent a follow up request of any kind to Carolinas Medical

Center Pineville, as required by the regulations. *See* 20 C.F.R. § 404.1512(b)(1)(i).[7] In addition, there is no indication that the ALJ sent any correspondence to APRN Natt or her employer.

In addition, the Commissioner argues that the ALJ did not find Plaintiff's abdominal pain to be a medically determinable impairment. Def.'s Mem. 16. According to the Commissioner, while the ALJ was not required to do so, he nonetheless "analyzed Plaintiff's abdominal pain throughout the RFC determination." *Id.* The Commissioner asserts that the ALJ was not required to accept the Plaintiff's complaints of pain "without question" and was entitled to conclude that Plaintiff's complaints of "severe and debilitating pain were not supported by the evidence of record." *Id.*

However, I conclude that that the ALJ should have made further efforts to obtain a medical source statement from Dr. White and APRN Natt and, had those efforts failed, arranged for a consultative evaluation.

Dr. White treated Plaintiff during a critical period of this case, from December 2015 until April 2018—i.e., from before the alleged onset of disability (around July 21, 2016) until roughly 20 months after that date. No one was in a better position to understand the impact of Plaintiff's chronic illnesses on his ability to work than Dr. White. But the records from

---

[7] Although Plaintiff listed Carolinas Medical Center Pineville as a treatment provider on his original application, R. 278-79, in his appeal within the agency, prior to the hearing with the ALJ, Plaintiff cited Dr. Mack White as one of the health care professionals who had treated him. R. 323. Plaintiff also provided the name and mailing address associated with Dr. White in that same appeal. R. 323. Dr. White worked with South Charlotte Primary Care, which is part of the Carolinas HealthCare System and the facility located at Pineville-Matthews Road. R. 719.

Plaintiff's visits with Dr. White do not shed sufficient light on the source of Plaintiff's pain and Plaintiff's residual functional capacity.

Dr. White's notes from December 10, 2015, report that "[t]he patient is actually doing a bit better . . . he is more physically active at work." R. 726. However, after the alleged start of Plaintiff's disability, a different picture emerges. On May 3, 2017, Dr. White noted that "[t]his unfortunate 50-year-old man continues to have daily problems with severe at times midepigastric and right upper quadrant pain. He has not been able to work since last year." R. 709. On June 28, 2017, Dr. White reported that Plaintiff "has chronic at times severe abdominal pain mainly in the right upper quadrant area. This started after his cholecystectomy last year and has continued . . . he has not been able to work." R. 705. Dr. White added his impression, "[n]o change in chronic problems as noted above." R. 706. On September 20, 2017, Dr. White again reported that "[t]his unfortunate 51-year old man is much the same" as at the meetings earlier that year. R. 703. On September 22, 2016, Dr. White concluded, "[a]t this point I do not know when he will be able to return to work . . . . He will be following-up with me within the next few months depending on how his condition goes. We did refill his oxycodone today." R. 720. At least in the eyes of Dr. White, Plaintiff's condition did not improve from that point on.

Indeed, the abdominal condition was serious enough that physicians had begun to prescribe Percocet to Plaintiff starting in 2014, R. 539, and Dr. White continued to prescribe the powerful opioid pain medication, Oxycodone, through his last appointment with the Plaintiff on April 25, 2018. R. 1043.

When Plaintiff moved to Connecticut and a new medical system, a different treating clinician reached largely the same conclusions as Dr. White. On July 1, 2019, in the last

14

contemporaneous medical document of record, APRN Natt examined Plaintiff who reported that "he is unable to work." R. 1499 APRN Natt found no reason to question this assertion, and in her assessment of Plaintiff's diabetes, concluded: "Symptoms are worsening. Diabetic complications include peripheral neuropathy." R. 1499

The ALJ observed that "the record does not show that the claimant has a medically determinable impairment that could reasonably cause" his abdominal pain. R. 25. However, the ALJ also stated that it "appears that his pain is a neuropathic type of pain that could be related to diabetes." R. 25.[8] The ALJ then proceeded to consider the impact of Plaintiff's pain on his RFC. However, to the extent the ALJ believed Plaintiff's pain should not have been considered as part of the RFC assessment because the source of the pain was not sufficiently clear, the ALJ should have sought more information from Plaintiff's treating clinicians about the source of the pain.

With respect to the impact of Plaintiff's pain on Plaintiff's RFC, the ALJ should have followed up with Dr. White and reached out to APRN Natt to solicit their opinions on Plaintiff's functioning. The ALJ's opinion points to various normal findings in the medical records—i.e., Plaintiff's physical examination showed "a fully oriented individual appearing well developed and well nourished," "his abdominal exam revealed normal sounds," and he "had a normal neurological examination and had a normal psychiatric examination." R. 26. However, these findings are not inconsistent with Plaintiff's experiencing severe abdominal pain. In addition, although the ALJ references medical records stating that Plaintiff was able

---

[8] As noted, APRN Natt stated in 2019 that Plaintiff's "[d]iabetic complications include peripheral neuropathy." R. 1499.

15

to reduce his pain using Oxycodone, such statements do not speak to Plaintiff's ability to function at work (while on or off the medication). Indeed, Plaintiff testified at the hearing about the side effects of his medications. R. 24.

Dr. White and APRN Natt could have offered their opinions on how Plaintiff's chronic health problems impacted Plaintiff's residual functional capacity. Opinions from treating physicians are particularly useful because the physician has an opportunity to develop an informed opinion based on observations of the person over a period of time. Raw data from a treating physician is not as useful. *See Hallett v. Astrue*, No. 3:11-CV-1181 VLB, 2012 WL 4371241, at *6 (D. Conn. Sept. 24, 2012) ("It is the *opinion* of the treating physician that is to be sought; it is his *opinion* as to the existence and severity of a disability that is to be given deference.").

In *Tankisi*, the Second Circuit held that remand was not warranted because the medical records were "quite extensive," "voluminous," and included "an assessment of [the claimant's] limitations from a treating physician" sufficient to permit the ALJ to make an "informed finding." 521 F. App'x at 34. Here, in contrast, no such assessment of Plaintiff's limitations by Dr. White or APRN Natt, Plaintiff's treating clinicians, emerges from the records. Although Dr. White referenced in broad terms Plaintiff's inability to work, he does not describe function-by-function limitations. Similarly, although APRN Natt notes Plaintiff's report that he could not work, she does not analyze his particular limitations. Thus, the medical notes of these clinicians are not an adequate substitute for an evaluation of Plaintiff's RFC by a treating physician. This case is thus similar to *Guillen v. Berryhill*, where the Second Circuit remanded for development of the record, noting: "Unlike *Tankisi*, the medical records obtained by the ALJ do not shed any light on [the claimant's] residual functional capacity . . . The medical

16

records discuss [the claimant's] illnesses and suggest treatment for them but offer no insight into how her impairments affect or do not affect her ability to work." 697 F. App'x 107, 108-09 (2d Cir. 2017).

Medical records discussing illnesses and symptoms, or providing other raw medical data, without more, do not establish whether Plaintiff's impairments affected or did not affect "[his] ability to work, or [his] ability to undertake [his] activities of everyday life." *Id.* at 109. The ALJ stated that although he gave little weight to the reports of Angela Dyer and Dr. Dorothy Linster about Plaintiff's functioning, he gave significant weight to the opinion of Dr. Anthony Przybyla, who concluded that Plaintiff could engage in light work with some limitations. R. 26. However, Dr. Przybyla never examined Plaintiff and was simply relying on Plaintiff's medical records. Because Plaintiff's medical records did not include a function-by-function analysis of Plaintiff's limitations, Dr. Przybyla opinion does not suffice to fill the gap.

Given the record in this case, an assessment by an examining medical professional was needed to properly determine RFC. *See Angelica M*., 2021 WL 2947679, at *9. Here, the ALJ did not secure "'the sorts of nuanced descriptions and assessments that would permit an outside reviewer to thoughtfully consider the extent and nature' of Plaintiff's impairments and 'their impact on her RFC.'" *Collazo v. Saul*, No. 3:19-cv-01174-TOF, 2020 WL 7021680, at *4 (D. Conn. Nov. 30, 2020) (quoting *Sanchez v. Colvin*, No. 13 Civ. 6303 (PAE), 2015 WL 736102, at *8 (S.D.N.Y. Feb. 20, 2015)).

Accordingly, I conclude that the ALJ erred by failing to develop the record to include a medical source statement from Dr. White and APRN Natt or, if one could not be obtained, arranging a consultative examination. *See Cote v. Berryhill*, No. 3:17CV95 (WWE), 2018 WL

1225543, at *3 (D. Conn. Mar. 9, 2018) ("An ALJ is required to seek out additional evidence where there are "obvious gaps" in the administrative record.").

## IV. CONCLUSION

For the reasons explained above, Plaintiff's motion to reverse and award benefits is **DENIED.** Plaintiff's alternative motion for remand is **GRANTED**. The Commissioner's motion to affirm is **DENIED**. I hereby vacate the Commissioner's decision and remand the case for further administrative proceedings consistent with this opinion.

**SO ORDERED.**

New Haven, Connecticut
January 26, 2026

/s/*Sarah F. Russell*
SARAH F. RUSSELL
United States District Judge